DECISION AND JUDGMENT ENTRY
This is an appeal from the defense verdict entered by the Toledo Municipal Court at the conclusion of a bench trial. For the following reasons, we affirm the decision of the trial court.
This matter arose as a result of a traffic collision between Craig McKimmy and Roger Miller that occurred on July 25, 1997. McKimmy was driving a dump truck for appellant, Sylvester Material Company. Miller was driving a semi with a flat bed steel hauling trailer, which was owned by Daniel Michael. Each vehicle was making a left-hand turn from an interstate exit ramp. At the time of the collision, McKimmy was in the inside left-hand turn lane and Miller was in the outside left-hand turn lane,i.e., Miller was to the right of McKimmy. The trucks collided and caused property damage.
Appellant filed a complaint with jury demand against appellees alleging that Miller negligently caused the collision and that Michael was vicariously liable. Appellees included in their affirmative defenses that McKimmy's negligence and/or willful acts proximately caused appellant's injuries.
Trial began on January 6, 1999. The following relevant testimony was adduced. McKimmy testified that he "believe[d] he was in [his] lane" when he made the turn, although there were no line markings on the street. McKimmy also testified that he was stopped at the light before making his left-hand turn; however, that testimony was contradicted by his deposition testimony, which was that he could not be certain whether he was stopped or had the "go-ahead". McKimmy further testified that there was a truck on his right while he was at the red light, but that he did not know the position of Miller's truck.
With respect to his ability to turn his own truck, McKimmy testified that it was preferable to turn from the outside left-hand turn lane, but that he was on the inside lane because he had to make another left-hand turn soon thereafter. He could not recall, however, whether he had ever before made a left-hand turn from the inside lane before that day. McKimmy further testified that he had lift axles on the truck that were put in the down position when the truck had a heavy load, which it did that day. Due to the lift axles being down, McKimmy testified that it was harder to maneuver the truck. Although the lift axles can be put in the up position to make tighter turns, McKimmy stated that he did not feel it was necessary to do so on the day of the accident and, in fact, had never done so. McKimmy also testified that he did not know whether he was overweight at the time of the collision, but recognized that he had stated during his deposition that he had suspected that he was overweight at the time of the collision.
With respect to Miller's truck, McKimmy testified that Miller's trailer must have "tracked over" into McKimmy's lane because "tractor-trailers tend to move when they take a turn." However, McKimmy admitted that he assumed this occurred because he did not actually witness Miller's trailer move, sway or turn.
Miller testified on cross-examination that McKimmy was not in the lane next to him while he was stopped at the light. Miller, however, could confirm that there was a tanker truck in front of him at the red light. Miller stated that the tanker truck was completely around the corner before he started into the intersection. Miller also stated that he went straight out as far as he could and then turned when his wheels were "right up on the edge of the berm."
When asked if his trailer tracked into the other lane, Miller testified that his trailer was where it should have been when he was making his turn and that there were no marked turning lanes on the pavement. Additionally, Miller testified that the trailer would only have tracked five feet to the left because it was a forty-two foot trailer. According to Miller, the amount of tracking is determined by the distance between the kingpin and the rear wheels. All trailers track during a turn because of the pivoting that occurs.
With respect to the collision, Miller testified that after he made his swing, had cleared everything and got "straight-end around," he heard a "big boom." He looked back thinking he had blown a tire "and there he was." He testified that he immediately stopped his truck and got out to observe the trucks. Based on the north and south bound lane markers, Miller testified that he determined he was in his lane.
David Trausch, manager for appellant, arrived at the scene of the accident after the vehicles were already moved to the side of the road. He observed a pile of debris from the dump truck in the inner-most turn lane.
Charles Stansley, appellant's president, testified that having the lift axles down "should have no impact on the ability of the truck to turn." Rather, the extra axles allow more weight to be carried more safely.
Daniel Robins, mechanical engineer, testified as an expert witness in appellant's behalf. Robins testified that he did consulting "in just about any field," and that he had a "pretty general practice." Robins investigated ten to twelve other accidents before being hired by appellant. It was Robins' opinion, based on deposition testimony and the design of the intersection, that "the semi trailer tracked into the lane occupied by the dump truck and struck the dump truck, causing the damage." When shown Miller's drawing of the path he took in turning his truck, Robins was unable to calculate the geometry of the turn, "I'd need something with a little bit closer scale here to determine exactly where his trailer would be at all times through his turn." Nevertheless, Robins testified that it was possible that even if Miller made the turn he did, his truck would still have tracked into the other person's lane.
On cross-examination, Robins testified that this investigation was the first truck/truck accident on which he had given an opinion. Robins also testified that he did not have an opinion whether a truck with multiple axles attempting to make a left-hand turn with a full load should lift its lift axles. Robins, however, did opine that a truck driver should turn from the lane that is convenient for him; rather than always the outer-most left-hand turn lane. Robins stated that he did not know the speed of the vehicles, the angle of the vehicles at the point of impact, or their weight, but that he did not require that information.
When provided a hypothetical that debris was located in Miller's lane, Robins testified that his opinions would be greatly altered. Additionally, Robins stated that he did not have a criticism of the path Miller testified to taking.
Furthermore, Robins testified that a semi-tractor trailer such as Miller's could make a safe left-hand turn from the outside lane without tracking into the inside left-hand turn lane.
At this point, appellant rested. The defense moved for a directed verdict, which was denied by the trial court. Appellees then presented their case.
Miller was recalled for the defense. Miller testified that, pursuant to the commercial driver's license study book, a driver should be in the center lane (outside left-hand turn lane) to make a left-hand turn when there are two lanes available. After the collision had occurred, Miller testified that he exited his vehicle, checked his load, and suggested that they get the trucks out of the way. Miller stated the following:
 "A. * * * I said, `Let's get these trucks out of the way.' So he tried to back up. He couldn't move.
"Q. Why?
"A. Well, he had his dead axles down.
"Q. The middle axles?
 "A. Yeah. These middle axles were down. He couldn't move because he was into the trailer. I said, `Can you pull forward?' He tried to steer forward. He just kept going straight trying to push my truck. So I say, `Let me back away from you.' So I got in my semi and backed it back away from him.
 "I said, `Go ahead and pull up in front of me,' and he couldn't even go forward. He kept wanting to go into me again. So I said, `Lift your dead axles,' and when he did, he turned and got in front of me, and I pulled in behind him.
 "Q. Do you have an opinion as to whether or not Mr. McKimmy's failure to lift his dead axles while trying to make his left turn had anything to do with how this accident was caused?
* * *
 "A. Yes, I do. * * * Because if the man was running with overweight on dead axles, to carry the overweight, that means he's got more weight up on the steer axle, more than what should be there. And when you go to turn and those dead axles don't swivel and that weight is sitting dead on and you got four to five more ton on those two axles, you can't pull them."
The photographs taken at the scene by Trausch indicate that the middle axles were in the upright position.
With respect to road debris, Miller testified that there was debris in the center lane (Miller's lane) and from a tarp that had been ripped and fallen from inside his trailer. The debris on the trailer was part of a fender and the whole turn signal of McKimmy's truck.
The trial court held that there was conflicting testimony concerning what occurred. The court also stated that when presented both theories, appellant's expert supported them both. Ultimately, the trial court concluded that the matter came down to a question of credibility. Finding that the weight of the evidence was equally balanced, the trial court held that appellant failed to establish its burden of proof.
Appellant raises the following as his sole assignment of error:
 "THE TRIAL COURT ERRED IN FINDING IN FAVOR OF THE DEFENDANT-APPELLEE AND AGAINST THE PLAINTIFF-APPELLANT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Specifically, appellant asserts that the judgment was against the manifest weight of the evidence because the trial court failed to consider "the uncontroverted and undisputed expert opinion of Appellant's mechanical engineer and instead, based its decision solely on the self-serving testimony of the Appellee."
We begin with the proposition that we must defer to the trial court as the finder of fact. The trial court was in the best position to view the witnesses, observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Seasons Coal Co.,Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. As such, a reviewing court should not substitute its judgment for that of the trial court. Id. The decision of that trier of fact, be it judge or jury, will not be reversed as being against the manifest weight of the evidence as long as it is supported by some competent, credible evidence going to each of the essential elements of the case. C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus; Vogel v.Wells (1991), 57 Ohio St.3d 91, 96.
In a cause of action for negligence, the plaintiff has the burden of proving the existence of a duty, a breach of that duty, and an injury that is the proximate result of that breach.Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75,77. The plaintiff must prove each and every element of this cause of action by a preponderance of the evidence. See, generally, Prosser Law of Torts (5 Ed. 1984) 239, Section 38.
We agree with the trial court that appellant failed to establish by a preponderance of the evidence its claim of negligence. As the trial court pointed out, Robins' testimony supported both parties' theories of what occurred at the time of the accident. Robins' testimony that Miller tracked into McKimmy's lane was based upon appellant's version of the facts, including in part, that there was debris in McKimmy's lane of travel. However, Robins also testified that if there was debris in Miller's lane of travel, to which Miller testified, then he would have to change his conclusion. Hence, Robins' opinion depended on what version of the facts he was given.
Additionally, McKimmy testified that he was always within his lane of traffic, but according to Miller, after the collision, McKimmy could not turn his truck away from Miller's until he lifted his axles. This is consistent with the testimony from McKimmy and Miller who testified that it is harder to make a sharp turn in a full truck with the lift axles in the down position. This information, coupled with Miller's testimony that there was debris in his lane, is consistent with a finding that McKimmy crossed into Miller's lane. Therefore, contrary to appellant's assertion on appeal, there was evidence supporting both parties' versions.
The trial court found that each version of the evidence to be of equal weight. Accordingly, appellant failed to meet its burden. Upon reviewing the entire transcript of the trial, we find that the trial court's decision is supported by some competent, credible evidence, and is not against the manifest weight of the evidence. See Morris, supra. Appellant's sole assignment of error is therefore found not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J.,Richard W. Knepper, P.J., CONCUR.